# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ETHAN BOOK, JR.,<br>  Plaintiff,<br><br>  v.<br><br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, et al.,<br>  Defendants. | CIVIL ACTION NO.<br>3:08cv821 (SRU) |

## MEMORANDUM OF DECISION

Ethan Book brings this suit *pro se* seeking damages arising out of a mortgage foreclosure and sale of real property located in Fairfield, Connecticut (the "Fairfield property"). Book's complaint raises claims for negligence, breach of contract, violations of the Connecticut Unfair Trade Practices Act, fraud, coercion, conspiracy, intentional infliction of emotional distress, and the "establishment and participation in a hostile environment." Complaint at 21-25. The complaint alleges that federal subject matter jurisdiction is founded on both diversity and federal question. In June 2008, I issued an order to show cause why the court had federal subject matter jurisdiction.

This ruling addresses Book's failure to show cause why the court has subject matter jurisdiction and the defendants' motions to dismiss (doc. #5 and doc. #34). Defendants John Centopani and Attorney's Title and Abstract Co., Inc. ("ATAC") have moved to dismiss counts 10-19 (doc. #5) and defendant Mortgage Electronic Registration Systems ("MERS") has moved to dismiss counts 1-9 (doc. #34). For the reasons that follow, the case is dismissed for lack of subject matter jurisdiction pursuant to Rule 12(h)(3). Alternatively, the defendants' motions to dismiss are GRANTED. The remaining pending motions are DENIED as moot.

I.      **Order to Show Cause**

A.      Diversity Jurisdiction

On June 5, 2008 I issued an order to show cause why this case should not be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). Doc. #3. In that order, I stated that there is no diversity jurisdiction because the Complaint shows on its face that diversity is not complete. Specifically, the plaintiff and defendants ATAC and Centopani are all residents of Connecticut. Defendant MERS is a resident of Delaware and Virginia. In order to properly invoke the subject matter jurisdiction of the federal courts on the basis of diversity, there must be "complete diversity" between the parties. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."). For purposes of diversity jurisdiction, a corporation has dual citizenship – it is a citizen of the state of its incorporation *and* the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *R.G. Barry, Inc. v. Mushroom Makers, Inc.*, 612 F.2d 651, 654 (2d Cir. 1979). Because the plaintiff is not completely diverse from the defendants, I concluded that there was no subject matter jurisdiction on the basis of diversity.

In his response to the order to show cause, Book argues that, because he alleges he would not be afforded a fair hearing in state court, due process concerns and notions of fairness outweigh the requirement of complete diversity. Because a court cannot ignore the lack of complete diversity in the circumstances presented here, I conclude that Book has not succeeded in demonstrating that there is subject matter jurisdiction on the basis of diversity.

B.     Federal Question Jurisdiction

The Complaint alternatively alleges federal question jurisdiction, citing 18 U.S.C. §§ 1961-1964, 42 U.S.C. §§ 1985 and 1986, and the Ninth Amendment to the United States Constitution.  In the order to show cause, I explained that where a claim based on federal question jurisdiction is not "colorable," i.e., immaterial or made solely to obtain jurisdiction, or is "wholly insubstantial and frivolous," a court may dismiss it for want of subject matter jurisdiction.  *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 41 n.6 (2d Cir. 2008) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006)).

I first determined that Book failed to state a colorable claim under the civil Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1964(c), because the Complaint failed to set forth any allegations of a conspiracy beyond the statement that his legal claims "involve issues of . . . conspiracy (including systematic bias and racketeering)."  "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).  Furthermore, it is not sufficient for a plaintiff to simply allege that his injuries resulted from any act committed in furtherance of a RICO conspiracy.  "[A] civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by any act in furtherance of a conspiracy that might have caused the plaintiff injury.  Rather, consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an act that is analogous to an 'ac[t] of a tortious character,' meaning an act that is independently wrongful under RICO."  *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000) (quoting 4 Restatement (Second) of Torts § 876, Comment b).

-3-

In his response to the order to show cause, Book contends he has sufficiently alleged that MERS engaged in acts of extortion, i.e., to collect or attempt to collect an extension of credit, as defined by 18 U.S.C. § 894.  Specifically, Book alleges that MERS attorneys left him messages stating that if he did not pay the deficiency on his mortgage by a certain date, his property would be auctioned off.  Complaint ¶ 20.  He further alleges that MERS attorneys engaged in unfair litigation practice in state court by arguing that he had waived certain issues by filing his Answer, that MERS never informed him how much the reinstatement amount would be before closing on the foreclosed property, and suggesting that they would withdraw their motion to reserve the balance of proceeds from the sale if Book withdrew his appeal.  Because those claims are nothing more than conduct undertaken in the ordinary course of business or litigation and cannot be fairly characterized as extortion that is independently wrongful under RICO, Book has failed to establish a colorable RICO claim against MERS.

As against Centopani and ATAC, Book contends that, by placing a dumpster in the Fairfield property's driveway, by making erroneous statements that Book would receive a court hearing before an order of execution of ejectment was issued, and by leading Book to believe that his possessions had been disposed of, the defendants engaged in a pattern of racketeering activity.  As with the RICO allegations against MERS, however, there is nothing in this conduct that is inherently tortious or independently wrongful under RICO.  Thus, Book has failed to raise a colorable RICO claim against ATAC or Centopani.

I also stated in my order to show cause that Book had failed to state a colorable claim under 42 U.S.C. §§ 1985 and 1986, namely that he had not made any allegations that any alleged conspiracy was motivated by a discriminatory, class-based animus.  To state a claim under

section 1985(3), a plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). Significantly, the conspiracy must "be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation omitted). The "class-based animus" requirement was added specifically to prevent section 1985(3) "from being broadly – and erroneously – interpreted as providing a federal remedy for 'all tortious, conspiratorial interferences with the rights of others.'" *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971)). Section 1986 claims are derivative of section 1985(3) claims – in the absence of a cognizable section 1985(3) claim, there can be no section 1986 claim. *Id.* at 292.

In his response to the order to show cause, Book contends that he was subject to a discriminatory, class-based animus based on his status as a pro se litigant, a whistleblower, and as a white male. Even assuming that those classes are subject to section 1985(3) protection, Book has nevertheless failed to assert a colorable claim because he has failed to explain how the defendants' acted on the basis of a discriminatory bias stemming from his membership in any of those particular classes. Therefore, section 1985(3) cannot provide the necessary basis for federal question jurisdiction.

C.    Ninth Amendment Claim

Briefly, as I explained in the show cause order, merely referencing the Ninth Amendment

is not sufficient to confer subject matter jurisdiction.  In his response, Book alleges that the

defendants violated his Ninth Amendment right to marital privacy by depriving him of a

"reasonable and secure home" for himself and his family.  Because there is no constitutional right

to avoid home foreclosure, Book's response does not effectively cure the subject matter

jurisdiction deficiency identified in my show cause order; this is simply not an actionable claim

under the Ninth Amendment.

D.    Federal Debt Collection Practices Act

For the first time, Book raises the Federal Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692c(a), as a source of federal question subject matter jurisdiction.  Book points to the

allegations contained in counts three and six as sufficient to state a claim under the FDCPA,

which provides that "a debt collector may not communicate with a consumer in connection with

the collection of any debt . . . at any unusual time or place or a time or place known or which

should be known to be inconvenient to the consumer."  15 U.S.C. § 1692c(a)(1).

In counts three and six Book alleges that MERS improperly served notice of its mortgage

foreclosure suit at the Fairfield property after he advised it that he was not residing at that address

and that he was not properly informed of the mortgage foreclosure suit until several months later.

There are several problems with this claim.  First, as a mortgage company, MERS was collecting

a debt on its own behalf and thus cannot be fairly characterized as a "debt collector" subject to

the FDCPA.  *Somin v. Total Community Management Corp.,* 494 F. Supp. 2d 153, 160

(E.D.N.Y. 2007) (bank collecting mortgage payments on its own behalf not a debt collector

under the FDCPA).  Second, although Book may disagree with MERS' method of service while

he was incarcerated, Book has not demonstrated that MERS' method of service was actually

ineffective, nor has he cited any case law indicating how improper service of a mortgage

foreclosure lawsuit is actionable under the FDCPA.  Thus, Book's allegations do not give rise to

a colorable claim under the FDCPA.

     For the foregoing reasons, I conclude that Book's response to my order to show cause

was not sufficient to establish how this court has federal subject matter jurisdiction to hear what,

in substance, are solely state law claims.  Thus, his suit must be dismissed for a lack of subject

matter jurisdiction pursuant to Rule 12(h)(3).

## II.  Motions to Dismiss

     Even if Book has alleged a sufficiently non-frivolous claim that supports federal question

subject matter jurisdiction, dismissal is still warranted on the basis of the defendants' motions to

dismiss the Complaint in its entirety.  MERS has moved to dismiss counts one through nine on

the ground that the *Rooker-Feldman* doctrine bars Book's claims because he is essentially a state

court loser who is asking this court to review a state court judgment.  Alternatively, MERS

contends that those counts should be dismissed on the basis of res judicata and/or collateral

estoppel.  Centopani and ATAC seek to dismiss the remainder of the counts on the ground that

they are barred by the statute of limitations, or alternatively, that Book has failed to state any

claim upon which relief can be granted.

### A.  MERS' Motion to Dismiss

     MERS contends that the *Rooker-Feldman* doctrine bars subject matter jurisdiction over

Book's claims because they are "inextricably intertwined" with the issues settled in the state

court action, relying on the Second Circuit's decision in *Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003).  Although the factual scenario set forth in *Bridgewater* is similar to the present case, because the *Rooker-Feldman* analysis in *Bridgewater* is drawn from *Moccio v. New York State Office of Court Administration*, 95 F.3d 195, 198 (2d Cir.1996), which was overruled by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), it no longer reflects the law of this Circuit.  *See McKithen v. Brown*, 481 F.3d 89, 96-97 (2d Cir. 2007) (recognizing *Exxon Mobil* overruled the *Rooker-Feldman* analysis set forth in *Moccio*).  Nevertheless, the *Rooker-Feldman* doctrine, as set forth in *Exxon Mobil*, remains a bar to at least one of Book's claims against MERS, described in more detail below.

MERS, however, is not without remedy to seek dismissal of Book's claims in counts one through nine.  Because most of Book's claims against MERS were decided on the merits by the state court, he is collaterally estopped from raising them again in federal court.  A discussion of the underlying facts makes this clear.

MERS asks this court to take judicial notice of the state court mortgage foreclosure proceeding, the subsequent appeals, and the final judgment of the state court in that matter.  According to the court records attached as exhibits to the Declaration of David F. Borrino, the following summary of facts regarding the disposition of the state court case cannot be disputed, which are also summarized succinctly by the Connecticut Appellate Court in *Mortgage Electronic Registration Sys., Inc. v. Book ("MERS I")*, 97 Conn. App. 822 (2006).

In June 2003, MERS commenced a foreclosure action against Book for non-payment of his mortgage loan.  Book was served with Summons and Complaint by abode service on June 18, 2003.  On November 5, 2003 Book filed a motion to dismiss the foreclosure action challenging

the sufficiency of service of process; he concurrently filed an Answer to the suit.  MERS filed a motion for summary judgment as to liability in December 2003.  The Superior Court denied Book's motion to dismiss and granted MERS's motion for summary judgment in January 2004. Book subsequently filed at least six motions for discovery, which were all denied.

On March 8, 2004, the Superior Court entered the first judgment of foreclosure by sale. Book subsequently filed a motion to vacate the March 8 order, which the Superior Court denied. The Superior Court subsequently pushed back the foreclosure sale twice, setting a final date of July 17, 2004 and ordering Book to file nothing further except an appeal of the foreclosure action in the Appellate Court.  Book filed his appeal in June 2004, which effectively stayed the foreclosure sale.  MERS filed a motion to dismiss the appeal.  In October 2004, the Appellate Court dismissed the portion of Book's appeal arising out of the March 8, 2004 judgment for foreclosure by sale, but permitted the portion arising out of the Superior Court's order denying reconsideration of the denial of his motion to vacate the March 8 order.  Book sought *en banc* reargument of the Appellate Court's order, raising claims challenging the sufficiency of the initial of service of process and the fairness of MERS' litigation strategy.  The Appellate Court denied Book's motion for reargument *en banc* on November 17, 2004.

MERS moved in the Superior Court to terminate the automatic stay of the foreclosure sale; the Superior Court granted MERS' motion to terminate the automatic stay and rendered a new foreclosure judgment with a sale date of March 26, 2005.  Book filed a motion for review, which was denied, and several motions for reconsideration, which were also denied.

In the meantime, the Appellate Court issued an order to show cause why Book's appeal from the order denying the motion to vacate the first foreclosure judgment should not be denied

as moot in light of the amended foreclosure judgment.  On March 23, 2005 the Appellate Court dismissed that appeal as moot.

The foreclosure sale went forward on March 26, 2005; defendant Centopani submitted the winning bid for the Fairfield property.  A closing on the Fairfield property was held on June 1, 2005, at which time title passed to Centopani.  An ejectment order was issued by the Superior Court on June 14, 2005 and Book was forcibly ejected from the property on June 27, 2005.  Book filed several amended appeals following those various orders and MERS filed a motion for supplemental judgment to secure payment of the judgment debt from the proceeds of the foreclosure sale, a motion for additional attorneys' fees, and a motion to reserve balance of the proceeds of the sale to cover future attorneys' fees incurred by MERS in connection with litigation over the Fairfield property.  The Superior Court granted the motion for attorneys' fees and to reserve the balance of the sales proceeds.

MERS filed a motion to dismiss the surviving appeals before the Appellate Court.  After issuing a show cause order why it should not dismiss the remaining appeals as moot, the Appellate Court dismissed most of Book's remaining appeals.  On October 10, 2006, the Appellate Court issued its written ruling in *MERS I*, affirming the Superior Court's supplemental foreclosure judgment that ratified the foreclosure sale, ordered the disbursement of the proceeds, awarded additional attorneys' fees, and granted MERS' motion to reserve the balance of the proceeds.  97 Conn. App. at 824.  The Connecticut Supreme Court denied Book permission to file a late petition for certification of the Appellate Court's decision on June 20, 2007.[1]

---

[1] In addition to the numerous appeals taken in the state court, Book has additionally filed two federal cases arising out of the foreclosure sale.  In *Book v. Richards*, 3:05cv892(PCD), Book brought suit against Superior Court Judge Earl Richards for claims arising out of the

1.     *Collateral Estoppel*

MERS alternatively seeks to dismiss Book's claims on the ground that they are barred by

*res judicata* and collateral estoppel.  The doctrine of res judicata, or claim preclusion, "provides

that 'a final judgment on the merits of an action precludes the parties or their privies from

relitigating issues that were or could have been raised in that action.'"  *Burgos v. Hopkins*, 14

F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  Collateral

estoppel, or issue preclusion, on the other hand, provides that "'once a court has decided an issue

of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a

suit on a different cause of action involving a party to the first case.'"  *Id.* (quoting *Allen*, 449

U.S. at 94).  Because Book is using this federal RICO and tort action to relitigate issues that were

decided in the state court mortgage foreclosure suit, collateral estoppel is the appropriate

preclusion doctrine to apply in this case.

When determining the preclusive effect of a state court judgment, a court must apply the

─────────────────────

foreclosure sale.   Judge Peter C. Dorsey dismissed his case *sua sponte*, concluding that Book's
federal suit lacked subject matter jurisdiction because it was seeking to set aside judgments
issued by the Superior Court prior to the commencement of the federal action.  June 3, 2005
Ruling and Order [Doc. #3] at 2-3.  Book's appeal of that decision was dismissed for failure to
file a brief by the date specified in the scheduling order on April 11, 2008.  Doc. #52.  In *Book v.
Norcott*, 3:07cv1367(PCD), Book brought suit against five Connecticut Supreme Court justices
for their refusal to accept his late petition for certification.  Judge Dorsey granted the defendants'
motion to dismiss, crediting the arguments advanced in that motion and ruling that Book had
failed to meet the twice-extended deadline to submit a memorandum in opposition to that
motion.  April 4, 2008 Ruling on Motion for Reconsideration, Doc. #25.  Upon reconsideration
of that ruling, Judge Dorsey adhered to his earlier ruling and held that Book's suit was dismissed.
November 20, 2008 Ruling on Motion for Reconsideration, Doc. #33 at 3-4.  On January 26,
2009, the Second Circuit denied Book's motion for leave to appeal; on February 11, 2009, the
Second Circuit denied Book's motion for reconsideration of that ruling and Book's appeal was
dismissed on March 3, 2009.  Doc. #40.

-11-

preclusion law of the rendering state. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Under Connecticut law, to be subject to collateral estoppel, an issue must have been: (1) "fully

and fairly litigated," (2) "actually decided," and (3) "necessary to the judgment" in the first

action, *Virgo v. Lyons*, 209 Conn. 497, 501 (1988) (internal quotations omitted)*,* and (4)

"identical" to the issue to be decided in the second action. *State v. Joyner*, 255 Conn. 477, 490

(2001). An issue has been fully and fairly litigated if the party against whom collateral estoppel

is asserted had a "full and fair opportunity" to litigate that issue in the prior proceeding. *Aetna*

*Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 306 (1991). "An issue is actually litigated if it is

properly raised in the pleadings or otherwise, submitted for determination, and in fact

determined." *Joyner*, 255 Conn. at 490 (internal quotation omitted). "An issue is necessarily

determined if, in the absence of a determination of the issue, the judgment could not have been

validly rendered." *Id.* (internal quotation omitted).

    <u>Counts one and two</u>. In count one, Book accuses MERS of failing to timely advise him

of its purchase of the mortgage note on the Fairfield property. In count two, Book claims that

MERS erred in instituting its mortgage foreclosure suit because it failed to take steps to ensure it

was complying fully with its corporate authority. These claims essentially challenge MERS'

legal authority to foreclose on the Fairfield property, an issue that was necessarily raised and

settled in MERS' favor in state court – the Superior Court expressly ratified MERS' right to

foreclose on the Fairfield property and recover its judgment debt from the sale proceeds, which

was affirmed on appeal.

    <u>Counts three, four, and six</u>. In these counts Book challenges the sufficiency of service of

process in the foreclosure suit. Book raised the same insufficiency of process claims in his

November 2003 Motion to Dismiss, which the Superior Court expressly denied in January 2004.

Count five.  In count five, Book raises claims relating to allegedly improper telephonic communications by MERS attorneys regarding MERS' filing of the mortgage foreclosure suit. Book's claims were expressly raised in his motion to the Appellate Court in support of reargument *en banc* of its October 2004 order.  The Court denied that motion.

Count seven.  In count seven, Book alleges that MERS attorneys engaged in improper litigation practices, specifically filing pleadings in the mortgage foreclosure suit that lacked a sufficient legal basis.  All the pleadings Book references in count seven were considered by the state courts and were resolved in MERS' favor.

Count nine.  In count nine, Book alleges that throughout May 2005, MERS improperly refused to answer his requests relating to the reinstatement amount of the mortgage loan prior to the foreclosure sale to Centopani.  MERS notes that those issues were not only addressed in a May 31, 2005 hearing before the Superior Court, at which the court denied any further extensions of time to satisfy the judgment prior to the closing, but that, by that time, the mortgage was already foreclosed upon and therefore, seeking reinstatement of the loan was not an available remedy to avoid loss of the property.   The Superior Court expressly gave Book additional time to satisfy the judgment and finally denied his requests for further extensions of time on May 31, 2005, thus allowing the closing to proceed on June 1, 2005.  If Book had a claim relating to MERS conduct in May 2005 regarding its failure to respond to his requests for a reinstatement amount, the proper forum was the May 31, 2005 hearing.

Because Book's claims rely on issues that have been fully and fairly litigated, actually decided, necessary to the judgment, and identical to the issues decided during the pendency of the

mortgage foreclosure suit, collateral estoppel bars him from pursuing those claims in this court.

2. *Rooker-Feldman*

The *Rooker-Feldman* doctrine effectively bars federal courts from reviewing state court judgments by stripping federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine is applicable to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Second Circuit has identified a four-part test to determine when the *Rooker-Feldman* doctrine is applicable: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must be complaining about injuries caused by the state court judgment; (3) the plaintiff must be inviting the district court to review and reject that judgment; and (4) the state court judgment must have been rendered prior to the time the plaintiff commenced his or her federal suit. *Hoblock*, 422 F.3d at 85. "'[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *McKithen*, 481 F.3d at 97 (quoting *Hoblock*, 422 F.3d at 88).

Count eight of Book's Complaint raises claims related to MERS' disbursement of money to the committee charged with the foreclosure sale of the Fairfield property, which was done by order of the Superior Court. These claims essentially complain about injuries caused by the state court judgment permitting the foreclosure to proceed and permitting the attorneys involved to be

reimbursed out of the foreclosure proceeds.  As a state court loser seeking to have this court review and reject a judgment entered prior to the time he commenced his federal suit, Book's claims in count eight are barred by the *Rooker-Feldman* doctrine.

Because Book's claims against MERS are barred by collateral estoppel and/or this court lacks subject matter jurisdiction to hear them, MERS' motion to dismiss counts one through nine is GRANTED.

> B.      ATAC and Centopani's Motion to Dismiss

ATAC and Centopani have moved to dismiss the remaining counts of the Complaint, arguing that the relevant statute of limitations has run on all of Book's claims, or in the alternative, that he has failed to state a legally cognizable claim under Federal Rule of Civil Procedure 12(b)(6).  As discussed in more detail below, all of Book's claims fail.  The reasons articulated are not the only reasons why dismissal of counts ten through nineteen is warranted, however, for efficiency purposes I will only address the most glaring legal deficiencies to each of Book's claims.

Count ten.  In count ten, Book complains that the defendants improperly attempted to close on and transfer title to the Fairfield property on June 1, 2005.  This count essentially involves a challenge to the legality of the transfer of title of the Fairfield property, an issue that was extensively litigated and ultimately resolved against Book in state court.  He is collaterally estopped from relitigating issues litigated during the course of the foreclosure proceedings and he is barred under the *Rooker-Feldman* doctrine from raising claims that allege injuries resulting from the state court judgment permitting the foreclosure to proceed.

Counts eleven and twelve.  Counts eleven and twelve involve the legality of placing a

dumpster at the Fairfield property on June 1, 2005, after title had been transferred to Centopani. In essence, these claims challenge the legality of the state court foreclosure proceeding because, on June 1, 2005, Centopani became legal titleholder to the Fairfield property, thus entitling him to place a dumpster on the property without first seeking Book's permission to do so. As these claims allege injuries arise out of actions by third parties produced by the state court judgment that permitted the foreclosure to proceed, they are barred by the *Rooker-Feldman* doctrine.

Counts thirteen, fourteen, and sixteen. In these counts, Book alleges injuries relating to and arising out of Book's ejectment from the Fairfield property on June 27, 2005. Counts thirteen and fourteen relate specifically to the defendants' decision to seek an ejectment order from the court. Book is collaterally estopped from raising issues relating to the conduct leading to the ejectment order because any legal infirmity related to the ejectment order should have been addressed in the state court at the time the ejectment order was issued. Count sixteen alleges injuries arising out of the ejectment itself; it is barred for lack of subject matter jurisdiction pursuant to *Rooker-Feldman* because Book is complaining about injuries caused by the state court's order of ejectment and/or third party actions that were produced by that order.

Counts fifteen and seventeen. To the extent that count fifteen raises a slander claim against the defendants for their comments directed at Book and his wife on June 21, 2005, it is barred by the two-year statute of limitations set forth in Connecticut General Statute § 52-597. Even if the defendants' slandered Book by suggesting to his wife that he was having an affair with his tenant, that claim was time-barred on June 21, 2007, two years after the slanderous statement was made.

To the extent that counts fifteen and seventeen allege claims based on the defendants'

threatening statements, mere threats generally do not give rise to liability unless they are so outrageous as to constitute intentional infliction of emotional distress ("IIED").  To succeed in a claim for IIED, a plaintiff must show that: (1) the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was likely to result from his conduct; (2) that the conduct was extreme and outrageous; (3) that this conduct caused the plaintiff's distress; and (4) that the plaintiff sustained severe emotional distress.  *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000).  Outrageous conduct is that conduct exceeding "all bounds usually tolerated by decent society."  *Id.* (quoting *Petyan v. Ellis*, 200 Conn. 243, 254 n.5 (Conn. 1986)).  Bad manners or distressing or hurtful conduct is not outrageous enough to sustain an IIED claim.  *Id.* at 211.

Even taking the allegations of the Complaint as true, the defendants' alleged conduct is not sufficiently outrageous to give rise to an actionable claim for IIED.  For instance, in count seventeen, Book complains that the defendants sent him a sympathy card.  Even assuming that the defendants were responsible for the anonymous sympathy card, there is nothing outrageous or conscience shocking about a card that states the sender is "[w]ishing you comfort, peace, and hope in this time of sadness.  In Deepest Sympathy on the loss of your property."  Pl. Ex. 16.

In count fifteen, Book alleges that the defendants, in an encounter at the state courthouse, threatened to place a second dumpster at the house, called him a liar, stated that they were constantly observing the property (which he alleges confirms they were "stalking" him), and that he should watch out in the event he might end up the dumpster.  Although threatening in nature, and perhaps distressing or hurtful, those comments simply do not rise to the level of conduct that exceeds all bounds tolerated by decent society.

Finally, the allegations connected to the breakdown of his marriage are not plausibly connected to any conduct on the part of the defendants and therefore do not give rise to a claim upon which relief can be granted.

Counts eighteen and nineteen.  Counts eighteen and nineteen raise objections to the defendants' (or their associates') conduct relating to another state court case involving the sale and transfer of property owned by Book's ex-wife, Daisy Sanchez (the "Sanchez property").  In count eighteen, Book objects to the defendants' representation of Monica Sullender in her attempt to purchase the Sanchez property, "in violation of active court orders."  Complaint at 25. The defendants ask the court to take judicial notice that Book has raised the same objections in a state court proceeding, *Book v. Sullender*, FBT-CV-07-5011895-S, (Conn. Super. Ct. 2007). According to the Superior Court's Clerk's Office, that case remains pending.  As a threshold issue, there is a clear subject matter jurisdiction problem: without complete diversity, this court has no jurisdiction to hear state law claims between non-diverse parties.  In addition, because Book may proceed with his challenge to the legality of the defendants' representation of Sullender in his state court proceeding, I will dismiss count eighteen under the *Colorado River* abstention doctrine.

Pursuant to the *Colorado River* doctrine, federal courts may abstain in favor of pending state court actions in limited, exceptional circumstances. *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 818-19 (1976).  A federal court should consider the following factors when determining whether to abstain in favor of the state court action: (1) the assumption of jurisdiction by either court over any res or property, (2) the inconvenience of the federal forum, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained;

(5) whether state or federal law supplies the rule of decision, and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996) (citing *Colorado River*, 424 U.S. at 818-19; *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15-16 (1983)).

In *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362-63 (2d Cir. 1985), the Second Circuit affirmed the district court's decision to dismiss the case pursuant to *Colorado River* where: (1) the plaintiff had filed both the state and federal court cases, (2) the state and federal actions arose out of the same set of facts and sought identical relief, and (3) the state court cases had progressed substantially, whereas the federal court proceeding was only in the preliminary stages. The Second Circuit concluded that dismissal was warranted in the interest of conserving judicial resources. *Id.* at 363.

The state court provides an adequate forum for Book to raise his challenges to the legality of the defendants' title search, representation of Sullender, and Sullender's subsequent purchase of the Sanchez property. Furthermore, these are parallel state and federal court actions arising out of an identical set of facts and the state court proceeding has been pending for over a year, while this case was filed less than a year ago. Therefore, I decline to address the merits of Book's claims in count eighteen under the *Colorado River* doctrine and that count is accordingly dismissed.

In count nineteen, Book alleges injuries arising from the conduct of Paul Begemann relating to the state court proceeding involving the disposition of the Sanchez property. As a threshold issue, it is not clear from the face of his complaint that Book is complaining of conduct

-19-

committed by any of the named defendants.  Nevertheless, I conclude that permitting Book to amend his complaint to add Begemann as a party would be futile for the reasons outlined in connection with count eighteen.  First, it is unclear that there would be any basis for subject matter jurisdiction because Book is alleging state law claims against what appears to be a non-diverse defendant.  Second, all the allegations in count nineteen relate to Begemann's conduct in connection with the sale and transfer of the Sanchez property to Sullender.  Any challenge to the propriety or legality of Begemann's conduct in connection with that suit is better addressed in the state court that is hearing the underlying claims against Sullender.  For those reasons, I decline to exercise jurisdiction over the merits of count nineteen and order it dismissed pursuant to *Colorado River*.

### III.    Conclusion

This case must be dismissed for lack of subject matter jurisdiction because there is a lack of complete diversity necessary to support diversity jurisdiction and Book has failed to allege a non-frivolous claim that supports federal question jurisdiction.  In the alternative, Book's claims must be dismissed, *inter alia*, on the basis of collateral estoppel, for a lack of subject matter jurisdiction under *Rooker-Feldman*, as time-barred under the applicable statutes of limitations, for failure to state a claim upon which relief can be granted, and on the basis of *Colorado River* abstention.

For the foregoing reasons, the defendants' motions to dismiss (**doc. #5** and **doc. #34**) are **GRANTED**.  The remaining motions are **DENIED** as moot.  The clerk is directed to close the

file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 26th day of March 2009.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge